I'd like to start with a quote from Freedom to Speak is of little value if there's nothing to say. And when a member of the press, a credentialed journalist, goes out in a public place, out in millions of acres of Nevada desert where the government is working, and is precluded from seeing their handling of a public resource, which are wild horses, on public lands, it's a public place, then something is wrong there. What's great about today is that this court has an opportunity to either draw a line in the sand to allow both parties to decide where they are with respect to where the press and the public can stand or where they can be or what they can see. It'll help both of them or give us good guidelines on where that line in the sand should be drawn. I agree. We need to, assuming we get to the merits, that we need to set the standard. But not surprisingly, in light of what we asked you to talk about, the three of us have to decide, first of all, whether the case is moot. And you know, of course, the reasons why. I mean, your complaint spoke about a particular gather. The request for the injunction went much farther. And the question we deal with is, is it moot? So tell us, please, if you will, why it is that this case is not moot. In light of the fact that the Silver King horse gather is already complete, your request for tracing those horses deals with other locations without specifying what they are. How do we deal with that? Well, thanks. There's two reasons why. And thanks for allowing us to make that briefing after the ADA case. And you know, the history of that is that Judge Morris in England decided in April that, you know, So the ADA case is different for a couple of reasons, three reasons. One is nothing that was asked for in the ADA case in the preliminary injunction phase of it is asked for in this case. If you go through all of the court record, you'll see that right off the bat, the request is press access, First Amendment right. No, this is not an illegal roundup. You know, it could be anything out there. But back to the merits, there's a couple of reasons. One is this same conduct, denying the press or the public access, happened before Silver King, during Silver King, and it happened after Silver King. In other words, this is not the only roundup that's occurring. You're looking at the capability of repetition concept, is that right? Yes. That's well, there's two. That's the repetition, capable of repetition, but evading review. And in this case, I believe the Silver King roundup, at least the roundup phase of it, lasted only 18 days. There's only one case that I'm aware of that was able to be able to be filed in a federal court and went all the way to the U.S. Supreme Court and decided in 18 days, and that was the Pentagon Papers case. But aside from that, 18 days is an awfully short period. And in fact, this court has held as long as two years. On that exception, there's not enough time. Well, in effect, the Defense of Animals case, Judge Rawlinson and the dissent, of course, agreed with your concept. The majority did not. It felt that you had a discrete amount of time here. The way it was pled, that's what you're dealing with. And although your complaint is, you know, literary and deals with lots of important issues, it still seems to focus on the Silver King gather. Are we not bound by what the complaint says in terms of its prayer, in terms of its focus, regardless of how the request for preliminary injunction is made? Well, I think you're bound by some of it, yes, Your Honor. I would agree with that. But, you know, there's a distinction here, and that is this. And I believe also that this court has some discretion in giving a little leeway, particularly where you can see, for example, where First Amendment matters is engaged. So when you look at the Lomax case, okay, that was a voter initiative. They tried to get on the ballot in Nevada in a, what, 2004 election. Three years later, it comes here. What happened? Well, you found it not moved. And the reason was it was capable of repetition but evading review. And that, you know, and that voter's initiative. We have that in environmental cases as well. Yes. A lot of those. Yes. And then also in the same thing with regard to court access, okay? For example, the Richmond, Virginia newspaper is an excellent case. And there is, you know, two reporters. They were denied access to watch a trial because of the pretrial publicity. The case had been tried, I forget, a couple of times. Well, that was a criminal case, though, right? It was a criminal case. But, and granted, there's limited access there. But what's the difference? Okay? Anyway. I want to, I'm sure my colleagues are going to want to explore the mootness more as well. But I guess one of the things I would really like your input on is what, let's assume for a moment we get past the mootness standard. We seem not to have any precedent right on point here. We have other jurisdictions like the Sixth Circuit and so on that has a standard. That seems a rather mushy kind of a standard. If we agree with you, what standard should we adopt? What are the elements of an appropriate standard that would give the appropriate press rights to people who are, from the press's perspective, maybe not following through on what the law says or giving people access? What should we be doing? You mean setting it aside and just looking at it on your own? Yeah. If you had a tabula rasa here and you could write the elements of a test, what would it be? Well, we're going to run up against public safety. That is a legitimate concern, and we recognize that. But in the past, what's happened is, and I'll give you an example, and it is in the record, so I'm not going out of it. But what's happened is, there are times when Ms. Lee is pushed far back, and for some reason, perhaps the glint of her camera lens is going to spook the horses coming into what's called the jute, while at the same time, the contractor who is rounding up the horses, his family with little kids is playing right next to the jute. How does that work? I mean, there's some things going on. Well, how about giving us a standard, not you know, Judge Smith asked you a very direct question. Thank you. If it's very relevant to your case, then you don't appear to have an answer. I do, Your Honor. Thank you. So you acknowledge that public safety is an important element. But that aside, what are the elements of an appropriate standard from your perspective? I also think that the press, members of the public, have a right to see the actual capture of horses. And the reason that is important is that is the time where they are more stressed than any other time. That is the time that generates the most significant public interest. I understand that that's this case. But whatever we say, if we agree with you, it's not just going to be about horses. It's going to affect a lot of things. So how would you articulate this first element that you're talking about? That the press has the right to what? The press has a right to at least see what is actually occurring. So, for example, if you were riding along in a police car, the press were riding along in a police car, and there were some roughhousing, are you saying that the press have the right to kind of get the right shot and get in between the police and the other folks or just get back to the public safety issue? Well, if you get in between a police officer and somebody that he's trying to determine is breaking the law, you've got a problem. I'm sure we recognize that. Okay. I will acknowledge this, though, and that is that if you look at Laura Lee's conduct, there's been no issue. She's not been very cooperative. She goes where she stands. She stands where she's told to stand. Sits where she's told to sit. You know, with respect, you know, we're giving you an opportunity to give us something here. I don't question your client's good faith or motives or anything like that, but the reality is the government, perhaps properly, is going to say, you know, look, we'd sure love to help, but the fact is this is a dangerous deal. We don't want anybody to get hurt. We have all these other responsibilities, and there really is no way to articulate the standard, and I've asked you to give us a standard, and you're telling us about what a nice person your client is, and so we'll stipulate that your client is a nice person, but how does that help us with this standard? Well, it has to be accessed at least enough, at least in my thought, to gain the public trust of what the agency or the government entity is doing. Wait a minute. So you want us to say go ahead. I didn't give you an example. The government makes a pretty strong argument of using the right-to-access standard, so as I read that brief, I said, okay, this makes sense to give us a context in which to make the decisions. Do you agree with the right-to-access approach? What are we talking about, Judge Wallace? If you haven't, have you read the government's brief? Yes, I have. Okay, well, I'll let the government answer the question, then, if you have no response to it. But the other thing I would like to ask you about is our California First Amendment coalition case. It seems to me that that provides a pretty fair outline of how we could decide this case. Do you have any disagreement with that? I apologize. I forgot the facts of the First Amendment coalition case. Just remind me, and I'll pick it right up. No, it's okay. If you're not prepared to answer that question, it's fine. Thank you. All right. You've got three minutes and 50 seconds left in your whole presentation. Are you going to let your co-counsel? It doesn't matter to me, but he looks like a nice guy, and I think he wants to come up here. Is that right? Okay, great. Whatever you want to do. We'll reserve your time. Very well. Okay, very good. We'll hear from the government. Good morning, Your Honors. Nicholas Demasio for the United States, and may it please the Court, I'd like to start by making a few points regarding the mootness of this interlocutory appeal and then proceed to explain why the district court did not abuse its discretion in denying the plaintiff her requested preliminary injunction, assuming that the court were to find that the case is not moot. With respect to mootness, it's vital that this court recognize that what this is is an appeal from the denial of a preliminary injunction. The plaintiff's underlying claims for declaratory and injunctive relief remain pending before the district court in Nevada, and so the only question that this court needs to answer with respect to mootness is whether the court can afford any preliminary injunctive relief while the district court considers the merits of her First Amendment claims. Now, with respect to the Silver King Gather itself, that gather finished over a year ago, on October 13, 2010, and contrary to the amici speculation in their supplemental briefing, the BLM has scheduled no further gather operations at Silver King. The question really is if that is the only issue. If that's the only issue, of course the government is right. But what bothers me is that there's an issue that's been raised by the appellate, which is an appropriate issue, of the tracking system, which doesn't have anything to do with the gathering, and the access to documents under FOIA requests. Now, those two issues have nothing to do with the gathering, whether it occurred before or after. They're really self-standing. Now, why would they be moot? Why wouldn't we have jurisdiction to decide whether the district judge was right or wrong on those issues? Our position is that on those forms of relief, that those forms of relief were waived because they haven't been raised before this court. The only other relief that the plaintiff requested in her opening brief and her reply brief before this court had to do with access to facilities. There was nothing in there about a tracking system or the ability to get information without a FOIA request. So those types of relief are no longer at issue before this court. The facilities are... Our jurisdiction was waived? The court would have discretion to reach those issues if you wanted, but our position... We have the jurisdiction. You're not – you don't – the government doesn't contend we've lost jurisdiction over this appeal. No, Your Honor. Well, only to the extent that – only to the extent that the relief that she's requested is moot. In that instance, then the court would lack jurisdiction. Okay. The waiver argument is not jurisdiction. Okay. So your position is that those issues have been waived? That's correct. As to the tracking system, I mean, there was a whole long list of relief that the plaintiff put in her motion for preliminary injunction, and our position is just that if she was still interested in those other forms of relief, she should have raised them before this court in her opening brief. The only thing that she mentioned in her opening brief was access to the gather itself and access to the facilities where the horses are stored. So as to those other forms of relief, they're no longer an issue. Okay. They're waived under our approach. That is our rules that they have to be. So it's one that we can waive, which the government would not want us to do. We would request that the court not address the continuing vitality of those other forms of relief because they were not raised in the opening brief. And so it's not something that we addressed in our answering brief. Of course, if they weren't, if they are still live issues, I think that we have a very strong case on the merits that, in fact, the First Amendment is not a Freedom of Information Act, and so she should have to use a Freedom of Information Act to get that kind of relief. Let's get to that. I understand your merits part. Let's get to that. So let's assume for just a moment that the district court, and this is just arguendo, that the district court had the wrong standard, and that standard, the judge's misunderstanding affected his ruling about the injunction. So let's assume we get to the merits here. I've asked your opposing counsel, what would an appropriate rule be? How would we articulate a Ninth Circuit rule dealing with gather? But, of course, it doesn't just affect the gather. We're talking about press access. If you had the right as the government, keeping public safety in mind, what elements would there be to an appropriate test that you think would meet your public safety concerns and yet would still recognize the importance of the press having the right to observe and report on important public issues? Your Honor, I would follow a rule that's set out most clearly in Hoochins, which is the primary Supreme Court case on this issue, which says that the First Amendment does no more than assure the public and the press equal access to the extent that the government has opened its doors. So the test, and this test was also applied by the Sixth Circuit in Shark, is first to take a look at whether or not the government in any way selectively delineated the audience. In other words, did it give somebody better access than another? And if there's no evidence of any discriminatory treatment, then you look at if the government has a legitimate purpose for placing any kind of restriction on the access to information and whether or not the means that the government used to effectuate that legitimate interest was reasonably related. So Shark, the Shark has a three-part test. Is that test one that the government would find acceptable were we to get to that issue? Yes, that's a test that we would find acceptable. And here, the way it would play out is the district court made three important findings of fact that are due deference from this court because we're here on a denial of a preliminary injunction. One is that the district court found that the BLM treated the plaintiff no differently than all other members of the public and press at the gather itself. A second finding was that the plaintiff was in fact able to see the gather operations despite the restrictions that the BLM put into place. And the third finding of fact was that the plaintiff provided no evidence of discriminatory access to the wild horse holding facilities that she requested access to. Correct me if I'm wrong. I thought that the district court only performed the first step of the Shark analysis. Am I mistaken? You're right, Your Honor, in the sense that the district court stopped with those findings of fact and found no discriminatory treatment. So if, again, this is all just for discussion purposes, but let's assume for a moment that that is correct, would it not be appropriate for us to send this back to the district court with a clear instruction, and then, again, arguendo, we're adopting basically the Shark points here, and then the district court would have an opportunity to reanalyze what it then had before it, using these criteria and applying all the criteria. Is that correct? Well, Your Honor, this court has the ability to affirm on any basis supported by the district court. No, I understand that. So I don't think it's necessary to send it back to the district court to complete the legal analysis. I mean, these are findings of fact that the district court has made, and this court has made. You're saying that the factual analysis has already been made, that it's a waste of time to send it back to the district court because we get all of that and we can make that decision ourselves. That's correct, Your Honor. Could I ask you a question before you leave that? And that's the — I'm wondering whether we have to go to Cincinnati to solve this question. What's wrong with California First Amendment Coalition? It seems to me that that provides a structure we've already decided upon, and it would come out the same way the government proposes. Why the great interest in the Sixth Circuit? My understanding is that California First Amendment Coalition was a case about expressive activity, and that's not what we have here. This is not a case about the freedom of expression. Well, I understand it's not on all fours, but the very nature of how it's done, you know, CF, we can do those things, but the very nature of how First Amendment Coalition comes out seems to me to be the same thing the government's asking for. I think there are — the Supreme Court hasn't analyzed the right of access to information cases in the same way that it's analyzed freedom of expression cases. And so I don't think that you could simply rely on a freedom of expression case to state the standard in this case. This case, as it was pled and briefed before the district court in here, was a case about a right of access to restricted government information and facilities. And that type of a claim, what the Supreme Court's precedent says, is that the First Amendment does no more than provide the public and press equal access. So the starting point for the analysis in a right of access case is, is there equality? And, in fact, going back to Judge Smith's question, the Supreme Court doesn't go on in its right of access cases to consider how — whether or not there's a legitimate government interest or if it's reasonably related, and that's an addition that the Sixth Circuit has put on. So this Court would be free to stop at finding that the plaintiff received equal access to both the facilities and the gather. And that's why I think the district court stopped at that point in its analysis, because that's where the Supreme Court's analysis is. And when you take that approach, it basically leaves, though, to the government, the initial decision whether anybody but the government gets access, right? That's correct, Your Honor. I think that — So let me give you an example. Let's just say — let's pick an issue of current concern. Immigrants who are removed from the United States based upon a criminal offense. And let's just say that there was a plane at SFO, and there were 100 people who were going to be led in chains to the airplane and deported to wherever. The government might say, well, we don't want pictures of this. This doesn't look very good. And the press would say, gee, we really want to take a picture of that because it's just so horrible. We want to get that. Based upon the standard that you're talking about where the Supreme Court didn't go any farther, it really leaves it up to the government. As long as nobody but — as long as it isn't just the press that's excluded. Nobody else gets excluded. The government kind of controls everything that way, doesn't it? I think what the government would have to show, at the very least, is that there is a health and safety risk in that particular scenario. And once that legitimate kind of health and safety issue is present, the next step in the analysis is to say, is there a selective delineation of the audience? So, for example, in this case, there was some discussion about the danger of horses. You know, they're big animals and they can hurt people and something can spook them and so on. Based upon the standard that you're talking about, the government would have every right to say, you know, look, we really like the plaintiff here. She's a nice person. But we're not going to let anybody hear. We're just going to do this ourselves. Is that acceptable under that standard? Your Honor, I can certainly imagine situations where the danger to the BLM staff or to the public is so great that the government would be within its rights to completely deny all members of the public and press access to a given situation. I mean, one situation one could think about is, you know, there's a bomb threat in a public square. Of course the government can close off that square to the public at that time. And that's precisely what this Court said in Griefen. Now, Griefen was a case about expression. And so that took place under the forum access, the public forum analysis. But let's suppose that the claim instead was I have a right to be in that public square while the government is searching for bombs. I think in that situation the court shouldn't be getting involved in deciding whether or not, you know, there are less restrictive means for closing off the area. So what you're saying, if I understand you correctly, is if the court decides to basically articulate a standard that when we consider the elements, we clearly have to leave a lot of discretion to the government. There should be no presumption of access or something like that. It's got to be equal access for the Supreme Court. But otherwise you're saying that you've got to defer to the discretion of the government on whether public safety issues are involved. Well, I think the government has an affirmative duty to show that there is a health and safety risk. Okay. So the government bears the burden then, right, to show that health and safety are involved, right? I think that's correct in this particular situation. That's right. It wouldn't in the scenario where what you're talking about is access to a facility, which is government-owned property. Right. No, let's say it's SFO. I realize if you're on a military base or something it might be different. But it's something that would, but for some decision by the government, would normally be available. That's right. That's right. And then if there's a health and safety risk, as we've plainly shown in our briefs here, then the question is whether or not there was any kind of discriminatory access or any evidence of discrimination. The district court here plainly found after an evidentiary hearing that there was no discrimination with respect to this particular gather. And, again, what we're here on is an appeal from the denial of a preliminary injunction. So you'd like us to decide it procedurally on the basis that they're just, this is done, it's over, there's really nothing else left to do here. Or if we get to something else, the facts have already been decided by the district court and we can apply the law to that. That's correct. And I think following this Court's precedent in indefensive animals, it would be procedurally improper to, at this time, address whether or not anything having to do with the underlying merits of the suit. Indefensive animals was similarly an appeal from the denial of a preliminary injunction and it explicitly refused to address whether or not the underlying merits of the claims were moot or at all viable. And that's, we would urge the Court to decide this case just as indefensive animals was decided and hold that it was moot, it's moot in all those respects. I think your time is up unless my colleagues have any questions. Thank you very much for your presentation. I wanted to ask some questions, too. I want to talk to you about your right to access approach. Frankly, it strikes me as a good approach and one that is of interest, but is that been waived also or is that still before us? The right of access line of cases or something that we raised? Yes, your approach on right of access. Is that still viable before us? I believe so. We raised it in our answering brief. It's the primary argument why the plaintiff has no likelihood of success on the merits here. Did the district court get to that issue? The district court addressed that issue through its findings of fact that there was no discriminatory treatment at either the gatherer or with respect to access to the facilities. But didn't specifically identify right to access as an analytical approach to the issue? You're correct, Your Honor. It didn't, the district court did not go through that. My question is, because I think your right to access has merit, is whether it's really before us because the district judge has not yet determined that. And I wanted your response to that. Well, again, I think that's a legal matter. And as I was explaining in response to Judge Smith's question, our position is that this court has the discretion to affirm on any basis supported by the record. The facts are there. This court can lay out the correct legal analysis as it, whatever it believes the correct legal analysis is, it's not bound to the legal analysis of the district court. As I understand it, you feel there's no record of any First Amendment problem at all that's before us on this record. That's right. That's right. There's no, there was no violation of the plaintiff's First Amendment rights in this case because the district court found that she had in fact had, she was in fact able to see the gather and that there was no evidence of any discriminatory treatment. What's happened in the trial court since the appeal was filed to the preliminary injunction? The case remains stayed before the district court. No discovery has taken place. Who stayed it? The district court did. Did you call to the attention of the district court the sports forum case in which we were very specific that we don't want to have these cases delayed with a preliminary injunction. We don't care much for the idea of coming up here to find out what the law is on a record that we'll have to change later on. Was the motion made to the district court to lift the stay and proceed as we've asked them to do in sports forum? Your Honor, I wasn't actually the trial attorney on this case. I've only been handling the appeal. I understand. Someone else is at fault. But is there any such motion? There's not any such motion currently pending before the district court. It's something that I will raise with trial counsel. You can see the problem we have because the facts may come out differently and then we've gone off on a record without a payload. And it's problematic that it causes such a difficulty here. That case could have been completed by now or the parties could have stipulated and had the preliminary injunction be a final injunction, there's a lot of ways it can be handled. Sure. Okay. Thank you. Any other questions by my colleagues? Thank you very much. You have some remaining time. Thank you, Your Honors. You know, I hope we understand this is not a bomb threat case. It's not Area 51. What's the secret out there? The bottom line is that ever since the Calico roundup in the year 2010, there's not been a single picture taken by either an advocate. I don't think that's the problem with this case. The problem with this case is whether or not, to me, the problem with this case is whether it's moot, whether you can come into court. Now, it seems to me your burden is to show that these, a tracking system and the document access issues are actually before us. It seems to me that's what will save you from mootness. But counsel points out that you've waived that issue. I think you ought to respond to that one rather than the other global issue. Thanks, Your Honor. Those horses that were taken from Soberking are still in the facility. One part of that that is not waived is access to the facilities themselves. It might be true that documenting or asking the government for documentation on where these horses are and what's happened to them, that might be an issue that is waived, but not when these horses still are in the facilities because facility access was specifically before this quarter. You're talking about the tracking system? I'm talking about tracking horses from the time they left Soberking to wherever they are now. Okay. Where in your opening brief do you raise that issue? We're down to burning a lot of time, Your Honor. If I can find it, may I submit a brief letter brief pointing us out? I thought maybe you would be looking that up after you heard the attorney's argument on the issue. All right. Well, thank you. They raised it as well, and we responded to it. Well, let's put it this way. If it's not in the opening brief, do you agree that it's moved? Do I agree that the... In other words, if the tracking issue is not there, and we know the gatherer has already taken place, we, as a federal court, we don't have the ability that the state court might have to just wander all over the place. We have to deal with what's properly before us. And in this case, if it's not raised in the opening brief, and perhaps not even in the lower court, we have a problem, do we not? So did you find it? Docket entry number nine, page six. And what does it say? It's titled, Restricted Access to Wild Horse Warehousing. That's the caption. It starts off, Ms. Lee, I'm sorry. And the public had been previously allowed access to some of the facilities where the appellee's ship and store or warehouse captured wild horses. And then there's excerpts of record. What page is that? Page six. The opening brief. Opening brief. Okay. In the lower court, was this part of the prayer as well? Oh, absolutely. Okay. And it's replete. The judge thought that that was a public policy issue that the status quo was not brought. And with regard to your question, Judge Wallace, on what happened in the underlying case concerning why it's not moving forward, both the government and the all parties stipulated for a stay pending the appeal, Judge Larry Hicks denied it in part so he could render his decision in September. And I was one of the trial counsels in there. Do you have some basis for believing the horses are mistreated? I'm sorry, sir? Do you have some basis for believing that the horses are mistreated? Well, you mean an inhumane issue? It's not before the court. Do you want me to address it, sir? No. Do you have some basis? You asked the question. Yes, Your Honor. I think I do. I think there is. I think that if the camera is allowed just to see it, if the government is allowed to work in a glass bowl, you'll see what goes on. And it's important. Well, what gives you the – where does that suspicion come from? Well, it starts with the Calico case. And in Calico in December in 2010, that was the last time Laura Lee was allowed to take photos because when her photos were published and they were out there, it created a public uproar. And ever since then, the Broken Arrow facility, of which we're talking about, was closed. And so that's my basis for it there, right off the bat. That was the first one. They came out, and then after that, the doors shut, and that was it. Where were they published? It was published on the Internet, sir. And it's – I believe – I think it's in the excerpts of record as well. I just have one other question. Do you agree that prior restraint is not the right terminology? There is no prior restraint here, right? You agree? You know, you're right. It's – It's not Neer v. Minnesota, right? Correct. You know, it's a case – you know, it's a dynamic thing. When you get involved in a case like this and you're working with it, the first thing that strikes you in your heart is something is wrong here. And you try to pinpoint it, put the precise language on it. You may not get it quite right. But you know what? We're not very far from it. Okay. There is no prior restraint. My colleagues, do you have any other questions? No, I'm fine. Okay. Thank you both for an interesting argument. The case of Lay v. Salazar is submitted.
judges: Wallace, Noonan, Smith